**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

**In re:**

**SHERAE L. ELLISON**
**SHELLY D. ELLISON,**

      **CHAPTER 7**

   **Debtors.**

      **CASE NO. 13-12716-BFK**

**WELLS FARGO BANK, NA,**

   **Plaintiff.**

**vs.**

**SHERAE L. ELLISON**
**SHELLY D. ELLISON**
**H. JASON GOLD, TRUSTEE,**

   **Defendants.**

## MOTION FOR RELIEF

### NOTICE

YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)

IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT. UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.

IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.

**ATTEND THE PRELIMINARY HEARING SCHEDULED TO BE HELD ON JULY 17, 2013 AT 9:30 AM IN THE U.S. BANKRUPTCY COURT, ALEXANDRIA DIVISION, 200 SOUTH WASHINGTON STREET, ALEXANDRIA, VA – COURTROOM # 3, 3RD FLOOR.**

### NOTICE FROM SAMUEL I. WHITE, P.C.

PURSUANT TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT, WE ADVISE YOU THAT SAMUEL I. WHITE, P.C., COUNSEL FOR THE PLAINTIFF, IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE INDEBTEDNESS REFERRED TO HEREIN, AND ANY INFORMATION WE OBTAIN FROM YOU WILL BE USED FOR THAT PURPOSE.

**BRANDON R. JORDAN, ESQUIRE**
**COUNSEL FOR PLAINTIFF**
**SAMUEL I. WHITE, P.C.**
**1804 STAPLES MILL ROAD, SUITE 200**
**RICHMOND, VA 23230**
**STATE BAR #72170**
**(804) 290-4290**
**File #01-031066-12**

## MOTION FOR RELIEF

The Motion of Wells Fargo Bank, NA, by Counsel, hereby moves the Court for relief from the automatic stay and in support thereof represents unto the Court:

1. This Court has Jurisdiction over this proceeding pursuant to 28 U. S. C. Sections 157 and 1334 and 11 U. S. C. 362 (d), and that this matter is a core proceeding.

2. The Debtors filed a Petition under Chapter 7 of the Bankruptcy Code on June 11, 2013.

3. The Debtors are the owners of the real property located at 18 Summer Breeze Court, Sterling, VA 20165, which property is described as:

> **Lot 16, Section One (1), ENVIRONS, as the same appears duly dedicated, platted and recorded in Deed Book 775 at page 233, and corrected in Deed Book 786 at page 92, and further corrected in Deed Book 811 at page 153, and further corrected in Deed Book 821 at page 582, among the Land Records of Loudoun County, Virginia.**

4. Upon information and belief, Plaintiff is the holder and/or servicer of a certain Deed of Trust Note dated February 27, 2012, which Note is secured by a Deed of Trust of even date therewith and duly recorded.

5. The account is in arrears, with the approximate reinstatement amount through June 18, 2013 being $37,840.49, calculated as follows:

| | |
|---|---:|
| 9 monthly payments (08/01/12-04/01/13) @ $3,296.89/month | $29,672.01 |
| 2 monthly payments (05/01/13-06/01/13) @ $3,303.29/month | $6,606.58 |
| Accrued Late Charges | 659.40 |
| Property Inspection Fees | 45.00 |
| Foreclosure Fees and Costs | 857.50 |
| Total | $37,840.49 |

6. The unpaid principal balance due on said note is $468,621.24, and the payoff balance as of July 1, 2013 is $500,046.74.

**01-031066-12/jtd**

7. It is the opinion of the Plaintiff that the Debtors are financially unable to maintain said obligation and that Plaintiff will suffer irreparable injury, loss and damage if it is not permitted to foreclose upon its security interest; otherwise Plaintiff is without adequate protection.

**WHEREFORE**, Plaintiff prays that it be granted relief from the provisions of the automatic stay with regard to the said real property in order to pursue its rights pursuant to the terms of the Note and Deed of Trust, to include the institution of foreclosure proceedings, and further requests that the fourteen (14) day stay be waived incident to any Order entered incident to the Motion for Relief herein.

WELLS FARGO BANK, NA

By: **/s/ BRANDON R. JORDAN**
Eric David White, Esquire, VSBN 21346
Michael T. Freeman, Esquire, VSBN 65460
David W. Carter, Esquire, VSBN 70875
Kimberly B. Lane, Esquire, VSBN 78720
Brandon R. Jordan, Esquire, VSBN 72170
Johnie R. Muncy, Esquire, VSBN 73248
Samuel I. White, P. C.
1804 Staples Mill Road, Suite 200
Richmond, VA 23230
Tel: (804) 290-4290
Fax: (804) 290-4298
bjordan@siwpc.com

CERTIFICATE

I hereby certify that a true copy of the foregoing Motion and Notice of Hearing was served by regular mail or email this 18th day of June, 2013, on all necessary parties including H. Jason Gold, Trustee, 7925 Jones Branch Drive, Suite 6200, McLean, VA 22102; Robert R. Weed, Esquire, Counsel for Debtors, 7900 Sudley Road, Suite 409, Manassas, VA 20109; and Sherae L. Ellison and Shelly D. Ellison, Debtors, 18 Summer Breeze Court, Sterling, VA 20165.

**/s/ BRANDON R. JORDAN**
Samuel I. White, P. C.

**01-031066-12/jtd**

Exhibit A

MIN: [redacted]                                      Loan Number: [redacted]

# NOTE

FHA Case No. [redacted]

FEBRUARY 27, 2012          Houston                          TEXAS
[Date]                     [City]                           [State]

                18 Summer Breeze Ct, Sterling, Virginia 20165
                                [Property Address]

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means Envoy Mortgage, Ltd., A TEXAS LIMITED PARTNERSHIP
                                                                and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
FOUR HUNDRED SEVENTY-ONE THOUSAND TWO HUNDRED THIRTY-TWO AND
00/100                                              Dollars (U.S. $ 471,232.00     ),
plus interest, to the order of the Lender. Interest will be charged on unpaid principal, from the date of disbursement
of the loan proceeds by Lender, at the rate of FOUR AND 250/1000                       percent
(   4.250  %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning
on APRIL 1, 2012              . Any principal and interest remaining on the 1st    day of
MARCH, 2042                 , will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at 5100 Westheimer Rd., Ste. 320, Houston, Texas
77056
                                                                       , or at such other place
as Lender may designate in writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 2,318.18     .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.
(D) Allonge to this Note for Payment Adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

### 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty,
on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest
on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations
of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount
of the monthly payment unless Lender agrees in writing to those changes.

VIRGINIA - FHA FIXED RATE NOTE
VAFHA.NTE 11/23/10                      Page 1 of 3                    DocMagic eForms
                                                                       www.docmagic.com

Represents Redacted Information

### 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                                  percent (    4.000  %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

VIRGINIA - FHA FIXED RATE NOTE
VAFHA.NTE 11/23/10                                     Page 2 of 3                                     DocMagic eForms
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)
Sherae L. Ellison   -Borrower

_____ (Seal)
Shelly D. Ellison   -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

PAY TO THE ORDER OF Wells Fargo Bank, NA
WITHOUT RECOURSE
ENVOY MORTGAGE, LTD
By: _____
Its: BRAD MAURTIZEN
     TREASURER (Printed Name and Title)

*[Sign Original Only]*

This is to certify that this is the Note described in and secured by a Deed of Trust dated FEBRUARY 27, 2012 on the property located in  Sterling/LOUDOUN  , Virginia.

_____
Notary Public

My Commission expires:

Carolyn P Burns
Notary Public, District of Columbia
My Commission Expires 8/14/2015

Pay to the Order of
_____
Without Recourse
Wells Fargo Bank, NA
By _____
Mary A. Seamans
Vice President

018

VIRGINIA - FHA FIXED RATE NOTE
VAFHA.NTE 11/23/10          Page 3 of 3          DocMagic eForms
                                                 www.docmagic.com

20120705-0051267
Loudoun County, VA   Pgs: 1
07/05/2012 2:12:52PM
Gary M. Clemens, Clerk

Assessor's/Tax ID No. 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-000
Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Loudoun, Virginia
"ELLISON"

MERS #: [redacted]   SIS #: 1-888-679-6377

Date of Assignment: June 25th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ENVOY MORTGAGE, LIMITED, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: SHERAE L. ELLISON AND SHELLY D. ELLISON WIFE AND HUSBAND  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ENVOY MORTGAGE, LIMITED, ITS SUCCESSORS AND ASSIGNS
Trustee: SAGE TITLE GROUP LLC  Date of Deed of Trust: 02/27/2012  Recorded: 02/28/2012 as Instrument No.: 20120228-0014717  In Loudoun County, State of Virginia.

Assessor's/Tax ID No. 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-000

Property Address: 18 SUMMER BREEZE CT, STERLING, VA 20165

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $471,232.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ENVOY MORTGAGE, LIMITED, ITS SUCCESSORS AND ASSIGNS
On 6/28/12

By: _____
JESSICA BERNARDINO, Assistant Secretary

STATE OF Iowa
COUNTY OF Polk

On 6-28-12, before me, Alissa Doepp, a Notary Public in and for Polk in the State of Iowa, personally appeared JESSICA BERNARDINO, Assistant Secretary being duly sworn of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Alissa Doepp
Notary Expires: 1/24/15

ALISSA DOEPP
Commission Number 771340
My Commission Expires
January 24, 2015

(This area for notarial seal)

Prepared By: Luis Ohmstede, WELLS FARGO BANK, N.A. 1 HOME CAMPUS, MAC X2598-015, DES MOINES, IA 50328-0001
1-866-234-8271

20120228-0014717
Loudoun County, VA    Pgs: 11
02/28/2012 12:51:46PM
Gary M. Clemens, Clerk

Exhibit B

CASE: ▮
TAX ID: ▮
TITLE INSURER: FIRST AMERICAN TITLE INSURANCE COMPANY

This instrument prepared by:

After Recording Return To:
Envoy Mortgage, LTD
5100 Westheimer Rd., Ste. 320
Houston, Texas 77056
Loan Number: ▮
Case Number: ▮

Wells- ▮

Tax Map Reference No:

**After Recording Mail To:**
Sage Title Group LLC
4201 Connecticut Avenue, Suite 406
Washington, DC 20008

PIN:

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

FHA CASE NO.
▮

**MIN:** ▮

THIS DEED OF TRUST ("Security Instrument") is made on    FEBRUARY 27, 2012
The grantor is    Sherae L. Ellison and Shelly D. Ellison wife and husband
("Borrower").

The trustee is    SAGE TITLE GROUP LLC

a resident of the Commonwealth of Virginia, whose full residence or business address is    4733 BETHESDA AVE., #101, BETHESDA, MARYLAND 20814
and    N/A

a resident of the Commonwealth of Virginia, whose full residence or business address is
N/A ,
trustees (any one of whom may act and who are referred to as "Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Envoy Mortgage, Ltd., A TEXAS LIMITED PARTNERSHIP    ("Lender")
is organized and existing under the laws of    TEXAS
and has an address of    5100 Westheimer Rd., Ste. 320, Houston, Texas 77056
Borrower owes Lender the principal sum of    FOUR HUNDRED SEVENTY-ONE THOUSAND TWO HUNDRED THIRTY-TWO AND 00/100    Dollars (U.S. $ 471,232.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on MARCH 1, 2042    .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest,

FHA VIRGINIA DEED OF TRUST - MERS
VADOTZ.FHA 01/26/12    Page 1 of 8    DocMagic eForms
www.docmagic.com

96

▮ Represents Redacted Information

and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in LOUDOUN                    , Virginia:

LOT 16, SECTION ONE (1), ENVIRONS, AS THE SAME APPEARS DULY DEDICATED, PLATTED AND RECORDED IN DEED BOOK 775 AT PAGE 233, AND CORRECTED IN DEED BOOK 786 AT PAGE 92, AND FURTHER CORRECTED IN DEED BOOK 811 AT PAGE 153, AND FURTHER CORRECTED IN DEED BOOK 821 AT PAGE 582, AMONG THE LAND RECORDS OF LOUDOUN COUNTY, VIRGINIA.

which has the address of      18 Summer Breeze Ct
                              [Street]
Sterling                     , Virginia     20165         ("Property Address"):
[City]                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

FHA VIRGINIA DEED OF TRUST - MERS
VADOTZ.FHA  01/26/12                    Page 2 of 8                    DocMagic eForms
                                                                       www.docmagic.com

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the

FHA VIRGINIA DEED OF TRUST - MERS
VADOTZ.FHA  01/26/12                              Page 3 of 8                              DocMagic eForms
                                                                                            www.docmagic.com

Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

   6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

   7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

   If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

   Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

   Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

   8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

   9. **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

FHA VIRGINIA DEED OF TRUST - MERS
VADOTZ.FHA  01/26/12                        Page 4 of 8                        DocMagic eForms
                                                                               www.docmagic.com

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60 DAYS
from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to   60 DAYS                        from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.

FHA VIRGINIA DEED OF TRUST - MERS
VADOTZ.FHA 01/26/12                    Page 5 of 8                    DocMagic eForms
                                                                      www.docmagic.com

Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or

FHA VIRGINIA DEED OF TRUST - MERS
VADOTZ.FHA 01/26/12                    Page 6 of 8                    DocMagic eForms
                                                                      www.docmagic.com

any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Identification of Note.** The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgement hereto.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☒ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

## NOTICE

**THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

FHA VIRGINIA DEED OF TRUST - MERS
VADOTZ.FHA 01/26/12                    Page 7 of 8                    DocMagic eForms
                                                                       www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____(Seal)        _____(Seal)
Sherae L. Ellison        -Borrower         Shelly D. Ellison         -Borrower

_____(Seal)        _____(Seal)
                         -Borrower                                    -Borrower

_____(Seal)        _____(Seal)
                         -Borrower                                    -Borrower

Witness:                                Witness:

_____               _____

———————————— [Space Below This Line For Acknowledgment] ————————————

State of ~~VIRGINIA~~ CPB District of Columbia SS:
County of ~~LOUDOUN~~ CPB

The foregoing instrument was acknowledged before me this _____
by Sherae L. Ellison AND Shelly D. Ellison

_____
Signature of Person Taking Acknowledgment

Settlement Attorney
Title or Rank

N/A
Serial Number, if any

My commission expires: ___Carolyn P Burns___
Notary Public, District of Columbia
My Commission Expires 8/14/2015

(Seal)

FHA VIRGINIA DEED OF TRUST - MERS
VADOTZ.FHA 01/26/12                  Page 8 of 8                  DocMagic eForms
                                                                  www.docmagic.com

FHA Case No.: ███████████
Loan Number: ███████████

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 27th day of FEBRUARY, 2012, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to Envoy Mortgage, Ltd., A TEXAS LIMITED PARTNERSHIP
("Lender") of the same date and covering the Property described in the Security Instrument and located at:
18 Summer Breeze Ct, Sterling, Virginia 20165

[Property Address]

The Property is part of a planned unit development ("PUD") known as:
ENVIRONS

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of the Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners' Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

FHA - MULTISTATE PUD RIDER
USFHAP.RDR 10/29/08                    Page 1 of 2                    DocMagic eForms
                                                                       www.docmagic.com

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)        _____ (Seal)
Sherae L. Ellison          -Borrower         Shelly D. Ellison         -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                                   -Borrower

FHA - MULTISTATE PUD RIDER
USFHAP.RDR 10/29/08                    Page 2 of 2                    DocMagic eForms
                                                                      www.docmagic.com

## EXHIBIT "A"

Lot 16, Section One (1), ENVIRONS, as the same appears duly dedicated, platted and recorded in Deed Book 775 at page 233, and corrected in Deed Book 786 at page 92, and further corrected in Deed Book 811 at page 153, and further corrected in Deed Book 821 at page 582, among the Land Records of Loudoun County, Virginia.

**FILE NUMBER:** ███████